UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACK J. GRYNBERG, PRICASPIAN DEVELOPMENT CORPORATION, a Texas corporation, RSM PRODUCTION CORPORATION, a Texas corporation, and GADECO LLC, a Colorado limited liability company,<br><br>        Plaintiffs,<br><br>vs.<br><br>GOLDMAN SACHS GROUP, INC., a Delaware corporation, GOLDMAN SACHS INTERNATIONAL, a wholly-owned subsidiary, ABC COMPANIES 1-10 and JOHN DOES 1-40,<br><br>        Defendants. | Civil Action No. 2:12-cv-03525-CCC-JAD |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION
FOR SUBSTITUTED SERVICE**

# TABLE OF CONTENTS

| | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| STATEMENT OF FACTS | 2 |
| ARGUMENT | 2 |
| CONCLUSION | 7 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cephalon Inc. v. Sun Pharm. Indus., Inc.*,
  Civ. No. 11-5474, 2011 WL 6130416 (D.N.J. Dec. 7, 2011) .................................. 3, 4, 5

*Gottlieb v. Sandia Am. Corp*,
  452 F.2d 510 (3d Cir. 1971) ........................................................................................ 5

*Milligan v. Anderson*,
  522 F.2d 1202 (10th Cir. 1975) ................................................................................... 5

*Rio Properties, Inc. v. Rio Int'l Interlink*,
  284 F.3d 1007 (9th Cir. 2002) ..................................................................................... 4

*Shenouda v. Mehanna*,
  203 F.R.D. 166 (D.N.J. 2001) ...................................................................................... 3

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
  486 U.S. 694 (1988) ............................................................................................ 1, 3, 5

**Statutes**

Fed. R. Civ. P. 4 ................................................................................................... *passim*

**Constitutional Provisions**

U.S. Const. art. VI ..................................................................................................... 1, 4

Defendant The Goldman Sachs Group, Inc. ("GS Group") respectfully submits this memorandum of law in opposition to Plaintiffs' Motion for Substituted Service on GS Group's affiliate, Goldman Sachs International ("GSI").

## PRELIMINARY STATEMENT

Having filed this facially implausible action conclusorily alleging a far-flung conspiracy including GS Group and GSI, Plaintiffs now seek to evade the requirements of the Hague Convention for Service Abroad of Judicial and Extrajudicial Documents ("Hague Service Convention" or "Convention") and of Federal Rule of Civil Procedure 4(f), which mandate Plaintiffs to serve their complaint on GSI pursuant to the Convention. Plaintiffs' effort is specifically barred by the United States Supreme Court's decision in *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988), which held that service pursuant to the Hague Service Convention is "mandatory" when serving a foreign defendant, such as GSI, that resides in a signatory country to the Convention. Plaintiffs' request that it be permitted to avoid the Convention's mandatory service rules simply to spare some expense and delay would, if granted, effectively supersede a duly-signed and ratified treaty of the United States in violation of Article VI of the United States Constitution, which recognizes treaties as the "supreme Law of the Land."

There is no authority or precedent for Plaintiffs' proposal for "substituted service" on GS Group, nor is GS Group prepared or authorized to accept service of a frivolous complaint on behalf of GSI. In all events, as addressed more fully in GS Group's accompanying motion, this action should be transferred or dismissed; thus, there is no need for the Court to address the issue service upon GSI.

## STATEMENT OF FACTS

Plaintiffs allege a vast international conspiracy involving 27 independent financial institutions, purportedly established to blacklist Plaintiffs and impair their ability to obtain financing for oil and gas projects in the midst of the global financial crisis. (Complaint ¶¶ 1-61) As detailed more fully in GS Group's accompanying motion to transfer or dismiss, Plaintiffs and their affiliates have brought over 200 lawsuits against their business counterparts and competitors, including similar lawsuits alleging fantastic conspiracy theories, and courts have excoriated Plaintiffs for their litigation abuses and frivolous allegations.

As Plaintiffs acknowledge, GSI is a company registered in the United Kingdom of Great Britain and Northern Ireland. (Plaintiffs' August 10, 2012 Letter in Support of Motion for Substituted Service ("Marelic Letter") at 2)  The United Kingdom is a signatory to the Hague Service Convention. 20 U.S.T. 361, T.I.A.S. No. 6638 (1969), *available at* 1969 WL 97765.[1] Plaintiffs do not want to incur expense and delay they suggest would result from attempting service on GSI pursuant to the Convention. (Marelic Letter at 1-2)  Instead, they propose "substituted service" on GS Group, which is a New York based public company and an affiliate of GSI.

## ARGUMENT

Federal Rule of Civil Procedure 4(h)(2) provides that a corporation outside the United States *must* be served pursuant to Federal Rule of Civil Procedure 4(f).  Rule 4(f) in turn defines the acceptable means of service in a foreign country.  "Unless federal law provides otherwise," service must be effected:

---

[1] *See* http://www.hcch.net/index_en.php?act=conventions.status&cid=17 (listing United Kingdom as party to Hague Service Convention since 1969).

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the [Hague Service Convention];
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . . ; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f). The text of the rule thus "requires that a party first use 'any internationally agreed means of service that is reasonably calculated to give notice,' citing the method of service provided by the Hague Service Convention as an example." *Cephalon Inc. v. Sun Pharm. Indus., Inc.*, Civ. No. 11-5474, 2011 WL 6130416, at *5 (D.N.J. Dec. 7, 2011) (quoting Rule 4(f)(1)). Thus, "it is only when there is 'no internationally agreed means' or 'an international agreement allows but does not specify [alternative] means' that a party may effect service by the alternatives in subsections (2) and (3)." *Id.* (quoting Rule 4(f)(2)) (alteration in original).

Here, there is an internationally agreed means of service – the Hague Service Convention, to which both the United States and the United Kingdom are signatories. As the Supreme Court explained in *Schlunk*, 486 U.S. at 699, compliance with the Hague Service Convention is "mandatory" when serving a defendant that resides in a foreign country that is a party to the Convention. Accordingly, where (as in the present case) a defendant's home country "is a signatory to the Convention, the Convention's procedures are the *exclusive means* by which

3

service of process may be effected in that country." *Shenouda v. Mehanna*, 203 F.R.D. 166, 170 (D.N.J. 2001) (emphasis added).[2]

Plaintiffs incorrectly cite to *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002), for their claim that a party need not attempt service pursuant to Rule 4(f)(1) before seeking a court order under Rule 4(f)(3). (Marelic Letter at 3) But *Rio Properties* was applying a prior version of Rule 4(f) in which "each subsection is separated from the one previous merely by the simple conjunction 'or.'" *Rio Properties*, 284 F.3d at 1015. The "or" after the subsection (1) was subsequently deleted; thus, under the current text of the rule, subsection (1) is mandatory when its provisions are met, and resort to subsection (2) or (3) is permitted only when subsection (1) is not applicable. *See Cephalon*, 2011 WL 6130416, at *5 (distinguishing *Rio Properties* because it applied prior version of rule). In all events, the distinction is irrelevant when the Hague Service Convention is applicable, as here. As *Rio Properties* expressly recognized, even under the old text, a "federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention referenced in Rule 4(f)(1)." *Id.* at 1015 n.4 (finding Hague Service Convention inapplicable because Costa Rica was not a signatory). Likewise, the Hague Service Convention, as a treaty entered into by the United States, is the "supreme Law of the Land" under Article VI of the United States Constitution, and disregarding its mandatory service

---

[2] While the Hague Service Convention "authorizes special forms of service in case of urgency if convention methods will not permit service within the time required by the circumstances" (Fed. R. Civ. P. 4 advisory committee's notes to 1993 Amendments), Plaintiffs allege no such urgency here. In all events, courts have rejected motions for substituted service where plaintiffs fail to allege that their own diligent efforts to effect service under the Convention have failed. *See, e.g.*, *Cephalon*, 2011 WL 6130416, at *6.

4

methods would violate the introductory provision of Rule 4(f) that a method of service is improper if "federal law provides otherwise."[3]

Having failed to establish an entitlement to substituted service, Plaintiffs nevertheless suggest that substituted service on the GS Group may be appropriate because the GS Group "is an agent of GSI and may receive service of process on behalf of GSI." (Marelic Letter at 2) Plaintiffs do not cite any agency agreement or rule appointing GS Group the agent for GSI. Nor do they point to any authority that regular service on the GS Group is sufficient to serve GSI, and that argument would be baseless. Rule 4(h)(1)(B) is the controlling rule regarding service on a corporation's agents, and it authorizes service of process on a corporation only on "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Thus, courts, including the *Gottlieb* case cited by Plaintiffs (Marelic Letter at 3-4), have rejected service on any other purported corporate "agent" that does not meet these standards. *See, e.g., Gottlieb v. Sandia Am. Corp*, 452 F.2d 510, 514 (3d Cir. 1971) ("The applicable Federal Rule provides that valid corporate service can be effected only if certain designated personnel are served . . . .");[4] *Cephalon*, 2011 WL 6130416, at *4 (rejecting request under Rule 4(f)(3) to permit substituted service on subsidiary). Plaintiffs' arguments that the GS Group performed "financial risk management" for GSI and included GSI employees in its stock incentive plan (Marelic Letter at 2) simply do not come close to meeting the standard of Rule 4(h)(1)(B), nor do Plaintiffs suggest they do.

---

[3] Thus, none of the cases Plaintiffs cite for alternative methods of service under Rule 4(f)(3) (Marelic Letter at 4 (citing cases)) even mentioned the Hague Service Convention because Rule 4(f)(3) does not come into play if the Convention is applicable.

[4] Both *Gottlieb* and the other case Plaintiffs cite, *Milligan v. Anderson*, 522 F.2d 1202, 1205-07 (10th Cir. 1975), are readily distinguishable as neither address Rule 4(f)(3). In addition, *Gottlieb* expressly rejected the notion that the corporate form could be disregarded for purposes of service, *Gottlieb*, 452 F.2d at 514, while *Milligan* addresses personal jurisdiction, not service. *Milligan*, 522 F.2d at 1205-07.

In short, Plaintiffs' motion disregards (i) that the Hague Service Convention, as a treaty, is federal law that may not be overridden to effectuate service (*see* Rule 4(f)), (ii) that the text of Rule 4(f) requires application of the Convention where it is applicable, and (iii) that under Rule 4(f)(3), service by any means not authorized by the Convention is prohibited if the Convention applies because, as the United States Supreme Court explained in *Schlunk*, the service provisions of the Convention are "mandatory." Granting Plaintiffs' motion for substituted service as a courtesy because they do not want to incur expense and delay would disregard each of these controlling provisions and authorities; indeed, it would render the mandatory Convention a nullity.

In all events, as set forth in GS Group's accompanying motion to transfer or dismiss, this action is both specious and filed in the wrong court. GS Group respectfully suggests that consideration of its motion will obviate any need to address Plaintiffs' unfounded motion for substituted service.

## CONCLUSION

For the foregoing reasons, GS Group respectfully requests that the Court deny Plaintiffs' motion for substituted service.

Dated: August 21, 2012
       Newark, New Jersey

Respectfully submitted,

**WOLFF SAMSON PC**

/s/ Daniel D. Barnes
A. Ross Pearlson
Daniel D. Barnes
One Boland Drive
West Orange, New Jersey 07052
Phone: (973) 325-1500
Fax: (973) 325-1501
(rpearlson@wolffsamson.com)
(dbarnes@wolffsamson.com)


Of Counsel:
Lawrence T. Gresser
Daniel H. Tabak
Niraj J. Parekh
COHEN & GRESSER LLP
800 Third Avenue, 21st Floor
New York, New York 10022
Telephone: (212) 957-7600
Facsimile: (212) 957-4514

*Attorneys for Defendant*
*The Goldman Sachs Group, Inc.*

7