## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JACK J. GRYNBERG, PRICASPIAN DEVELOPMENT CORPORATION, a Texas corporation, RSM PRODUCTION CORPORATION, a Texas corporation, and GADECO LLC, a Colorado limited liability company,<br><br>                Plaintiffs,<br><br>     vs.<br><br>GOLDMAN SACHS GROUP, INC., a Delaware corporation, GOLDMAN SACHS INTERNATIONAL, a wholly-owned subsidiary, ABC COMPANIES 1-10 and JOHN DOES 1-40,<br><br>                Defendants. | Civil Action No. 2:12-cv-03525-CCC-MCA |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT THE GOLDMAN SACHS GROUP, INC.'S MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS THE COMPLAINT AND IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR LEAVE TO AMEND

3548188.1

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................ 1

ARGUMENT .......................................................................................... 3

I.    THIS ACTION SHOULD BE DISMISSED FOR IMPROPER VENUE
      OR TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK.................... 3

      A.    Plaintiffs Completely Ignore the Venue Statute,
            Which Unquestionably Precludes Venue in This District ...................................... 3

      B.    Plaintiffs Do Not Address The Relevant Factors
            For a Discretionary Transfer Motion That
            Weigh Heavily In Favor of Transfer.................................................................... 4

II.   ALTERNATIVELY, THE COMPLAINT
      SHOULD BE DISMISSED ON THE MERITS ................................................................ 5

      A.    Plaintiffs' Theories Are Less Plausible
            Than The Obvious Alternatives ........................................................................... 5

      B.    Plaintiffs' Tortious Interference with Contract
            Claim is Facially Defective and Cannot Be
            Rescued By Plaintiffs' Proposed Amendment ...................................................... 6

            1.    Plaintiffs Fail To State A Cause of Action
                  for Tortious Interference With Contract ..................................................... 6

            2.    Plaintiffs' Cross-Motion For Leave
                  To Amend Should Be Denied As Futile ..................................................... 8

      C.    Plaintiffs' Pleading Failures Require Dismissal
            of Their Tortious Interference With Economic
            Opportunity Claim ............................................................................................. 9

      D.    Plaintiffs' Failure to Allege an Underlying Tort
            Mandates Dismissal of their Civil Conspiracy Claim .......................................... 10

      E.    Plaintiffs' Claims are Time-Barred
            by the Applicable Statute of Limitations ............................................................ 11

CONCLUSION............................................................................................................ 13

i

3548188.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)........................................................................................... 2, 5, 9

*Assadourian v. Harb,*
  2011 WL 2160272 (3d Cir. June 2, 2011) ....................................................... 10, 11

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)................................................................................................. 2

*Creston Elecs., Inc. v. Cyber Sound & Sec. Inc.,*
  2012 WL 426282 (D.N.J. Feb. 9, 2012) .................................................................. 9

*Dello Russo v. Nagel,*
  358 N.J. Super. 254 (2003) ...................................................................................... 7

*Farris v. County of Camden,*
  61 F. Supp. 2d 307 (D.N.J. 1999) ......................................................................... 11

*Fineman v. Armstrong World Indus.,*
  980 F.2d 171 (3d Cir. 1992) .................................................................................... 9

*Grynberg v. Ivanhoe Energy, Inc.,*
  663 F. Supp. 2d 1022 (D. Colo. 2009)..................................................................... 1

*Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co.,*
  102 F. Supp. 2d 518 (D.N.J. 2000) .......................................................................... 4

*Lightning Lube, Inc. v. Witco Corp.,*
  4 F.3d 1153 (3d Cir. 1993) ...................................................................................... 7

*Major Tours, Inc. v. Colorel,*
  799 F. Supp. 2d 376 (D.N.J. 2011).......................................................................... 12

*New Jersey Sports Prod., Inc. v. Bobby Bostick Promotions, LLC,*
  405 N.J. Super. 173 (2007)....................................................................................... 7

*Pension Trust Fund for Operating Engineers v. Mortgage Asset Securitization Transactions, Inc.,*
  2012 WL 3113981 (D.N.J. July 31, 2012)............................................................. 5, 6

*Plumbers & Steamfitters Local 773 Pension Fund v. Can. Imperial Bank of Commerce,*
  694 F. Supp. 2d 287 (S.D.N.Y. 2010) ..................................................................... 6

3548188.1

*Printing Mart-Morristown v. Sharp Elecs. Corp.*,
    116 N.J. 739 (1989) ................................................................................................ 10

*Repetti v. Vitale*,
    2011 WL 3962518 (N.J. App. Div. Sept. 9, 2011) ................................................ 12

*RSM Prod. Corp. v. Fridman*,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009) ........................................................... 1, 2, 10

*RSM Production Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
    682 F.3d 1043 (D.C. Cir. 2012) .............................................................................. 6

*Singleton v. DA Philadelphia*,
    411 F. App'x 470 (3d Cir. 2011) ............................................................................. 9

*Travelers Indem. Co. v. Dammann & Co., Inc.*,
    594 F.3d 238 (3d Cir. 2010) ................................................................................... 8

*U.S. v. Therm-all, Inc.*,
    373 F.3d 625 (5th Cir. 2004) ................................................................................ 12

*United States v. Hayter Oil Co.*,
    51 F.3d 1265 (6th Cir. 1995) ................................................................................ 12

*United States v. True*,
    250 F.3d 410 (6th Cir. 2001) ................................................................................ 12

*Watson Carpet & Floor Covering, Inc. v. Mohawk Industries, Inc.*,
    648 F.3d 452 (6th Cir. 2011) ................................................................................ 12

*Wiatt v. Winston & Strawn, LLP*,
    2011 WL 2559567 (D.N.J. June 27, 2011) ......................................................... 9, 11

**Statutes**

28 U.S.C. § 1391 ........................................................................................................ 2, 3

28 U.S.C. § 1404(a) ................................................................................................... 2, 4

28 U.S.C. § 1406 ........................................................................................................... 4

Fed. R. Evid. 201(b)(1) ................................................................................................. 5

**Other Authorities**

*Restatement (Second) Conflict of Laws* § 145 ........................................................... 5

3548188.1

Defendant The Goldman Sachs Group, Inc. ("GS Group") respectfully submits this reply memorandum of law in response to Plaintiffs' Brief in Opposition to Defendant GSGI's Motion to Change Venue, or in the Alternative, Dismiss Plaintiffs' Complaint and in Support of Plaintiffs' Cross-Motion For Leave to Amend Complaint ("Opposition" or "Opp. Br.") and in further support of its Motion to Transfer this Action to the United States District Court for the Southern District of New York or, in the alternative, to Dismiss the Complaint, and in Opposition to Plaintiffs' Cross-Motion for Leave to Amend the Complaint.

## PRELIMINARY STATEMENT

Plaintiffs' Opposition makes clear that they filed a completely baseless complaint without factual support, consistent with the many other litigations in which they have been admonished and even sanctioned;[1] and they have brought this baseless case in a venue having no discernible nexus to their supposed claims. To withstand transfer or dismissal, Plaintiffs resort to arguing that the Court should not consider – until *after* Plaintiffs obtain discovery – any of the following pleading deficiencies and other fatal defects: (i) the implausibility of Plaintiffs' entire Complaint under the motion to dismiss standard (Opp. Br. at 1-2); (ii) the lack of any allegations supporting venue in this District (*id.* at 1, 4); (iii) the applicable choice of law on a motion to dismiss (*id.* at 5-6); (iv) the inadequate pleading of their conspiracy claim (*id.* at 13); and (v) Plaintiffs' failure to plead a claim within the statute of limitations. (*Id.*)

The Court should not countenance Plaintiffs' filing of a complaint that lacks factual support (or even a basis for filing in this District) and permit them to engage in a fishing expedition in pursuit of a well-pleaded complaint and a nexus to New Jersey. *See, e.g., RSM*

---

[1] *See, e.g., Grynberg v. Ivanhoe Energy, Inc.*, 663 F. Supp. 2d 1022, 1026-27 (D. Colo. 2009) (sanctioning Grynberg under Fed. R. Civ. P. 11 for "failure to have sufficient evidentiary support for allegations").

*Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 415 (S.D.N.Y. 2009) (admonishing plaintiffs for exhibiting "profound and fundamental misunderstanding of the legal and procedural requirements for filing a complaint"). Instead, the Court should transfer this action or summarily dismiss Plaintiffs' Complaint with prejudice.

As an initial matter, Plaintiffs do not even attempt to defend the allegation in their Complaint that venue is proper in this District pursuant to 28 U.S.C. § 1391. (Compl. ¶ 11) Instead, having failed to allege any connection whatsoever between their claims and this Court, the best that Plaintiffs can come up with is that they "cannot know if events occurred in . . . New Jersey." (Opp. Br. at 4) Plaintiffs' admission that they filed their action in New Jersey without *any* basis for doing so is ample ground for dismissing the case outright under well-established precedent. Alternatively, this Court should transfer the case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a) because the relevant factors – which GS Group has presented and Plaintiffs have not contested (beyond their idle speculation) – all weigh heavily in favor of transfer.

Plaintiffs' substantive causes of action fare no better, for at least three reasons:

*First*, Plaintiffs' Opposition identifies nothing in support of their absurd claim that their alleged inability to obtain financing from major financial institutions was due to a world-wide conspiracy engineered by GS Group. Plaintiffs' bizarre theory of a massive conspiracy is, in fact, backed by *no* facts, and it is utterly implausible in a global market with countless funding sources. Under the pleading standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), Plaintiffs' Complaint should therefore be dismissed on this basis alone.

2

3548188.1

*Second*, beyond implausibility, Plaintiffs' Opposition fails to establish a cause of action

on any of their claims.  With regard to their tortious interference with contract claim, Plaintiffs

do not (and cannot) dispute that they utterly fail to plead the key element, *i.e.* a contract to which

Plaintiffs are a party and with which the GS Defendants allegedly interfered.  Nor does

Plaintiffs' proposed amendment to their Complaint rectify this problem, as the amendment still

fails to identify any such contract.  With regard to their tortious interference with economic

opportunity claim, the Opposition, like Plaintiffs' Complaint, points to no business opportunity

that the GS Defendants allegedly interfered with.  Finally, Plaintiffs do not dispute that they have

failed to plead an underlying tort, which is a prerequisite to their civil conspiracy claim.

*Third*, Plaintiffs do not dispute that their tortious interference claims are barred by the

statute of limitations.  While Plaintiffs argue that the Court should assume a "continuing

conspiracy" to perpetuate Plaintiffs' civil conspiracy claim, the law is otherwise.

In sum, Plaintiffs are serial litigation abusers who filed a Complaint with fatally defective

claims in a jurisdiction that they are unable to connect to any of the alleged nebulous events set

forth in their Complaint.  Plaintiffs' proposed amendment solves none of those deficiencies.  The

Court should therefore transfer this case to the Southern District of New York or, alternatively,

dismiss Plaintiffs' Complaint with prejudice.

## ARGUMENT

## I.   THIS ACTION SHOULD BE DISMISSED FOR IMPROPER VENUE OR TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK

### A.   Plaintiffs Completely Ignore the Venue Statute, Which Unquestionably Precludes Venue in This District

Plaintiffs' Complaint alleges that venue is proper in this District under 28 U.S.C. § 1391.

(Compl. ¶ 11)  Yet, Plaintiffs never even reference Section 1391 in their Opposition, arguing

instead that venue is proper here "because [GS Group] maintains a large and significant presence

3

in New Jersey." (Opp. Br. at 3) But the issue here is not personal jurisdiction or whether GS Group does business in New Jersey. Rather, the issue is whether venue is appropriate in this District under the actual criteria of Section 1391. (Memorandum of Law in Support of Defendant The Goldman Sachs Group, Inc.'s Motion to Transfer the Action or, in the Alternative, to Dismiss The Complaint ("GS Grp. Br.") at 9-11) And there can be no question that it is not.

As a matter of law, where venue is improper, the court "shall dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406. Here, Plaintiffs cavalierly admit that they filed this action without any basis even to "know if events occurred in . . . New Jersey." (Opp. Br. at 4) Accordingly, the Court should transfer this action to the Southern District of New York or dismiss the Complaint for improper venue under 28 U.S.C. § 1406.

**B.  Plaintiffs Do Not Address The Relevant Factors For a Discretionary Transfer Motion That Weigh Heavily In Favor of Transfer**

Even if venue were proper here, nothing in Plaintiffs' Opposition presents any basis to maintain this action here under the relevant factors for transfer under 28 U.S.C. § 1404(a), which weigh heavily in favor of transferring this action to the Southern District of New York. (*See* GS Grp. Br. at 11-13) Plaintiffs do not dispute that the Court must consider "all relevant factors" in making its determination. (*Id.* at 11 (quoting *Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 526 (D.N.J. 2000))) Strikingly, like the Complaint, the Opposition identifies no nexus of the events and matters at issue to New Jersey. Instead, Plaintiffs address only two factors: Plaintiffs' claim that New Jersey substantive law applies and the relatively short distance between New York and New Jersey (and for that matter Yankee Stadium). (Opp.

4

Br. at 4-5)  Neither weighs against transfer here, where this case has no connection whatsoever to New Jersey – other than Plaintiffs' transparent forum-shopping.  (GS Grp. Br. at 11-13)[2]

## II.   ALTERNATIVELY, THE COMPLAINT SHOULD BE DISMISSED ON THE MERITS

### A.   Plaintiffs' Theories Are Less Plausible Than The Obvious Alternatives

Plaintiffs do not dispute that their Complaint cannot survive a motion to dismiss under controlling Supreme Court precedent if there are more likely explanations that render the allegations in the Complaint implausible.  (GS Grp. Br. at 16 (citing, *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)))  Plaintiffs also do not dispute that the worst financial and credit crisis since the Great Depression and Plaintiffs' persistent abuse of the litigation process are more plausible explanations for why some sophisticated financial institutions would be unwilling to do business with them.  (*See id.* at 16-17)  Instead, Plaintiffs suggest that those matters of public record are outside the pleadings and, bizarrely, that the motion to dismiss plausibility standard should not be considered until *after* discovery is completed.  (Opp. Br. at 1-2)

It is well-settled that courts can consider matters, such as the global financial crisis, that are "generally known within the trial court's territorial jurisdiction." Fed. R. Evid. 201(b)(1); *see also Pension Trust Fund for Operating Engineers v. Mortgage Asset Securitization Transactions, Inc.*, Civ. A. No. 10–898 (CCC)(JAD), 2012 WL 3113981, at *1 (D.N.J. July 31, 2012) (taking

---

[2] Plaintiffs do not dispute that New Jersey applies the "Second Restatement's most significant relationship" test in tort cases, but argue that the "law of the state of injury is applicable unless another state has a more significant relationship to the parties and issues." (Opp. Br. at 6)  Yet, the state of injury *cannot* be New Jersey because Plaintiffs, the allegedly injured parties, are not located in New Jersey and admit that they do not know of any events at all that occurred in New Jersey.  (*Id.* at 4)  Plaintiffs' other argument is that GS Group "maintains significant operations in New Jersey." (*Id.* at 6)  But that is irrelevant to the location of *Plaintiffs'* purported injury; and where GS Group maintains "significant operations" is not even part of the Second Restatement's most significant relationship test.  (*See* GS Grp. Br. at 15 (citing *Restatement (Second) Conflict of Laws* § 145))

5

judicial notice of global financial crisis in granting motion to dismiss); *Plumbers & Steamfitters Local 773 Pension Fund v. Can. Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 297 n.2 (S.D.N.Y. 2010) (taking judicial notice of financial crisis events "to the extent they inform the competing inference analysis" of plausibility). Likewise, the ten published cases GS Group cited in which courts have excoriated Grynberg's "odious tactics" are readily available and subject to judicial notice. (GS Grp. Br. at 1 n.2); *see Pension Trust Fund for Operating Engineers*, 2012 WL 3113981, at *5 (considering number of prior lawsuits filed). While Plaintiffs note that not *all* of the more than 200 cases they have brought were found to be frivolous (Opp. Br. at 11), they cannot and do not contest that their recidivist filings and contumacious litigation conduct are common knowledge, especially their allegations of phantom conspiracies. Accordingly, this Court should follow the lead of the D.C. Circuit in *RSM Production Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1048 (D.C. Cir. 2012), by finding yet another of Plaintiffs' outlandish conspiracy theories less plausible than alternative explanations and dismissing the Complaint on that basis.

### B.    Plaintiffs' Tortious Interference with Contract Claim is Facially Defective and Cannot Be Rescued By Plaintiffs' Proposed Amendment

#### 1.    Plaintiffs Fail To State A Cause of Action for Tortious Interference With Contract

Plaintiffs' Opposition does not dispute that the gravamen of a tortious interference with contract claim is the existence of a valid, binding contract between the plaintiff and a third party. (GS Grp. Br. at 18)  Nor does the Opposition identify a valid, enforceable contract that they have signed.  Their tortious interference with contract claim is therefore meritless.

Plaintiffs conjure up two arguments to excuse their failure to identify a valid, enforceable contract in their Complaint.  First, Plaintiffs argue that GS Group "interfered with Plaintiffs'

6

arbitration concerning the Caspian Sea matter that prolonged the arbitration. [GS Group] prepared the internal banking documents concerning BP's arbitration. The arbitration proceeding is similar to the negotiations that precede a contract. The final arbitration decision is similar to a contract." (Opp. Br. at 15)  There is no such claim as "tortious interference with something similar to a contract."  Moreover, Plaintiffs have made no effort to allege any facts suggesting interference with any arbitration or breach of a final arbitration decision.[3]

Second, Plaintiffs claim that GS Group "interfered with contracts concerning the production of ethanol in West Africa by blocking completion of funding." (Opp. Br. at 15)  The Complaint alleges that "MOST Ethanol, LLC, a Grynberg family company, obtained licenses" for ethanol production in West Africa. (Compl. ¶ 45)  But MOST Ethanol, LLC is not a plaintiff here, and there are no allegations that any of the Plaintiffs was party to these licenses.  Likewise, the Complaint does not allege GS Group's knowledge of the contracts, any malicious interference by GS Group, or a breach by any third party of the licenses as required under New York and Colorado law.[4]

---

[3] The litigation privilege also precludes liability for tortious interference predicated on alleged acts made in judicial and quasi-judicial proceedings. *See Dello Russo v. Nagel,* 358 N.J. Super. 254 (2003); *New Jersey Sports Prod., Inc. v. Bobby Bostick Promotions, LLC*, 405 N.J. Super. 173 (2007).

[4] To the extent Plaintiffs contend New Jersey tort law applies notwithstanding the absence of any connection of New Jersey to the events at issue, Plaintiffs still do not state a tortious interference with contract claim.  New Jersey law requires that "a plaintiff seeking to recover for tortious interference must show that the defendant specifically intended to interfere with that plaintiff," and "[f]rom this precept, it is axiomatic that a defendant cannot be liable for interfering with a contract of which he or she was unaware." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1170 (3d Cir. 1993).  Plaintiffs make no effort to allege that GS Group knew of MOST Ethanol or its West Africa licenses, much less intentionally interfered with them.

7

2.      Plaintiffs' Cross-Motion For Leave
        To Amend Should Be Denied As Futile

Having failed to defend their existing claim for tortious interference with contract,

Plaintiffs also cross-move to amend the Complaint to add allegations that relate only to that

cause of action.  Plaintiffs acknowledge their cross-motion should be denied if it is futile (Opp.

Br. at 20), which is true if it fails to remedy the defects of the initial pleading.  "In determining

whether a claim would be futile, the district court applies the same standard of legal sufficiency

as applies under [Federal] Rule [of Civil Procedure] 12(b)(6)." *Travelers Indem. Co. v.*

*Dammann & Co., Inc.*, 594 F.3d 238, 243 (3d Cir. 2010)) (internal quotations omitted).

Plaintiffs' proposed First Amended Complaint ("FAC") is futile because it fails to state a claim

for tortious interference with contract sufficient to withstand a motion to dismiss.

The sole substantive change Plaintiffs propose in their FAC is the addition of the

following three paragraphs to their tortious interference with contract claim:

> Goldman Sachs interfered with the arbitration by prolonging the
> proceeding and causing Plaintiffs unnecessary expense.
>
> Goldman Sachs interfered with Plaintiffs contracts to obtain
> funding for oil/gas drilling, exploration and production resulting in
> an additional expense and burden to Plaintiffs.
>
> Defendants intentionally and improperly interfered with Plaintiffs'
> performance of contracts between Plaintiffs and financial
> institutions/investors by causing Plaintiffs performance  to be more
> expensive or burdensome.

(*See* Proposed FAC ¶¶ 52-54)  Plaintiffs' proposed amendment is futile because the FAC would

still fail to state a claim for tortious interference with contract.

As an initial matter, Plaintiffs do not dispute that the statute of limitations bars their claim

for tortious interference with contract. (*See* GS Grp. Br. at 24; Opp. Br. at 13-14 (arguing only

that conspiracy claim is not time-barred))  An amendment to a pleading is futile where the

8

proposed claims would be barred by the applicable statute of limitations. *Singleton v. DA Philadelphia*, 411 F. App'x 470, 473 (3d Cir. 2011).

In addition, Plaintiffs' new allegations in the FAC are a model of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements [that] do not suffice" to defeat a motion to dismiss. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  Plaintiffs still have not identified any of the purported contracts at issue, much less offered any facts suggesting GS Group's knowledge of or malicious interference with the contracts.  Plaintiffs also do not allege any breach of contract by a third party, as required under New York and Colorado law. (*See* Section II.1 *supra*)  In short, the proposed amendment adds no facts necessary to support their claim.

## C.    Plaintiffs' Pleading Failures Require Dismissal of Their Tortious Interference With Economic Opportunity Claim

Plaintiffs do not dispute that a claim for tortious interference with economic opportunity must allege (1) a business relationship with a third party; (2) that the defendant intentionally interfered with that relationship; (3) the defendant acted maliciously; and (4) damages.  (GS Grp. Br. at 19; *compare* Opp. Br. at 18 (arguing that difference between New York and New Jersey law is that New Jersey law does not require defendant to have knowledge of relationship))[5] Plaintiffs' Opposition does not show how their Complaint meets this standard.

---

[5] In fact, New Jersey law does require the defendant's knowledge of the business relationship or expectancy. *See Fineman v. Armstrong World Indus.*, 980 F.2d 171, 186 (3d Cir. 1992) ("Under New York law, the . . . elements of a claim for tortious interference with a prospective business relationship [include] . . . *the defendant's knowledge of that expectancy* . . . .") (emphasis added); *accord Creston Elecs., Inc. v. Cyber Sound & Sec. Inc.*, Civil Case No. 11-3492 (FSH)(MAH), 2012 WL 426282, at *10 (D.N.J. Feb. 9, 2012) (same).  Otherwise, how could the defendant intentionally and maliciously interfere with the relationship? *See also Wiatt v. Winston & Strawn, LLP*, Civil Action No. 10-6608 (JLL), 2011 WL 2559567, at *22 (D.N.J. June 27, 2011) (finding no "true conflict" between New Jersey and New York law on claims for tortious interference with prospective business advantage).

3548188.1

Plaintiffs argue that their "complaint states that Plaintiffs had business relationships with numerous financial institutions [specifically] Lazard Freres, Morgan Stanley and Barclays." (Opp. Br. at 19)  With regard to Lazard Frères, Barclays, and Barclays' predecessor Lehman Brothers, the Complaint alleges only that they were in preliminary discussions with Plaintiffs. (Compl. ¶¶ 29, 32, 47)  This is plainly insufficient to allege the sort of continuing business relationship necessary to support a claim. (*See* GS Grp. Br. at 20 (citing *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 411 (S.D.N.Y. 2009))); *see also Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 752 (1989) (requiring "allegations of fact giving rise to some reasonable expectation of economic advantage" under New Jersey law).  Plaintiffs also do not suggest that they have alleged facts supporting the other elements of a tortious interference claim. (*See* GS Grp. Br. at 20-21 (describing missing allegations, including defendant's knowledge of relationship, malicious interference, and "but for" causation))  With regard to Morgan Stanley, Plaintiffs allege that one Mexico City employee was a "cousin of Grynberg's long-time friend and business associate in Monterey, Mexico" (Compl. ¶ 36), but Plaintiffs do not make any allegation that Grynberg had any relationship with the Morgan Stanley employee or that GS Group interfered with that relationship.  Plaintiffs likewise do not claim that they have alleged facts supporting any of the other elements of a tortious interference claim with regard to Morgan Stanley.  Plaintiffs therefore fail to state a claim for tortious interference with economic opportunity.

### D.     Plaintiffs' Failure to Allege an Underlying Tort Mandates Dismissal of their Civil Conspiracy Claim

Plaintiffs do not dispute that New York and Colorado law recognize a civil conspiracy claim *only* when the conspiracy is to commit an underlying tort. (*See* GS Grp. Br. at 22-23)  The same is true under New Jersey law. *See Assadourian v. Harb*, No. 11-1558, 2011 WL 2160272,

10

3548188.1

at *3 (3d Cir. June 2, 2011) ("[F]ailure to show that the defendants committed an underlying tort is fatal to his conspiracy claim."); *Farris v. County of Camden*, 61 F. Supp. 2d 307, 349-50, 354-55 (D.N.J. 1999) (same). Plaintiffs also do not dispute that the Complaint fails to allege a conspiracy to commit a specific tort. At most, Plaintiffs contend that they have "established enough facts to raise an expectation that discovery will reveal evidence of an illegal agreement." (Opp. Br. at 12) But Plaintiffs are not entitled to discovery unless they have already stated a claim, nor would evidence of an imaginary "illegal agreement" necessarily constitute an independent tort as required to state a claim.

Moreover, Plaintiffs do not dispute that they must allege specific times, facts, and circumstances of the alleged conspiracy. (GS Grp. Br. at 22-23 (citing cases)); *accord Wiatt v. Winston & Strawn, LLP*, Civ. A. No. 10-6608 (JLL), 2011 WL 2559567, at *22 (D.N.J. June 27, 2011) (dismissing conspiracy claim where plaintiff failed to allege "the conduct, time, place, and persons responsible . . . to support the theory that Defendants entered into an agreement to commit any of the unlawful acts alleged" (citing cases)). Plaintiffs do not contend they have alleged any such facts. Instead, they argue that they have alleged facts supporting GS Group's purported motive to carry out battles on behalf of BP and claim that because of the GS Defendants' "interference, Plaintiffs['] efforts at obtaining funding have been difficult." (Opp. Br. at 12) This argument contains none of the specific times, facts, and circumstances necessary to support a civil conspiracy claim.

### E. Plaintiffs' Claims are Time-Barred by the Applicable Statute of Limitations

Plaintiffs do not dispute that their claims for tortious interference with contract and tortious interference with economic opportunity are time-barred. (GS Grp. Br. at 24). Plaintiffs contest only whether their conspiracy claims is time-barred. (Opp. Br. at 13-14)

11

Plaintiffs argue that their conspiracy claim is timely because, they suggest, there is a general presumption that a conspiracy is ongoing; they cite only to *dicta* from federal antitrust cases for this unfounded proposition, which would exempt conspiracy claims from limitations scrutiny at the motion stage.[6]  New York and Colorado law reject the argument that a tort is presumed ongoing even if there are no acts alleged within the limitations period.  (*See* GS Grp. Br. at 24 (citing cases)); *see also Major Tours, Inc. v. Colorel*, 799 F. Supp. 2d 376, 387 n.3 (D.N.J. 2011) (holding that under both New Jersey and federal law, "the ongoing conspiracy doctrine does not allow recovery for claims that are otherwise barred" but instead makes plaintiffs' conspiracy claims timely only "to the extent they are based on [actions] within the statutory period, even if the agreement underlying the conspiracy was formed outside the statute of limitations"); *Repetti v. Vitale*, 2011 WL 3962518, at \*5 (N.J. App. Div. Sept. 9, 2011) ("Absent the support of a timely [underlying tort] claim, plaintiff's conspiracy claim cannot stand alone").  Accordingly, Plaintiffs' civil conspiracy claim, like their tortious interference claims, is untimely.

---

[6] Although *dicta* from *United States v. Hayter Oil Co.*, 51 F.3d 1265 (6th Cir. 1995), notes that a conspiracy is presumed to continue, the Sixth Circuit in fact described evidence of actions taken after the statute of limitations date in finding the case not time-barred.  *Id.* at 1271 (detailing evidence).  *See generally U.S. v. Therm-all, Inc.*, 373 F.3d 625, 631-636 (5th Cir. 2004) (explaining that *Hayter Oil dicta* cannot be reconciled with general rule on statute of limitations for antitrust conspiracy claims).  Plaintiffs' other Sixth Circuit cases quoting the *dicta* from *Hayter Oil* are likewise not on point.  *Watson Carpet & Floor Covering, Inc. v. Mohawk Industries, Inc.*, 648 F.3d 452 (6th Cir. 2011), did not even address the statute of limitations.  *United States v. True*, 250 F.3d 410 (6th Cir. 2001), denied prevailing party fees for vexatious, frivolous or bad faith prosecution to an acquitted criminal defendant "because there was evidence to support a finding that the conspiracy continued past [the statute of limitations date], we cannot say that the Government lacked probable cause in pursuing this prosecution, or that it did so out of ill will towards True."  *Id.* at 425.

12

## CONCLUSION

For the foregoing reasons and the reasons cited in their opening memorandum of law, GS

Group respectfully requests that the Court dismiss the Complaint in its entirety with prejudice or,

in the alternative, transfer the action to the Southern District of New York.

Dated:  November 1, 2012

Respectfully submitted,

**WOLFF SAMSON PC**

/s/Daniel D. Barnes
A. Ross Pearlson
Daniel D. Barnes
One Boland Drive
West Orange, New Jersey 07052
Phone:  (973) 325-1500
Fax:  (973) 325-1501
(rpearlson@wolffsamson.com)
(dbarnes@wolffsamson.com)

Lawrence T. Gresser
Daniel H. Tabak
Niraj J. Parekh
COHEN & GRESSER LLP
800 Third Avenue
New York, New York  10022
Telephone:  (212) 957-7600
Facsimile:  (212) 957-4514

*Attorneys for Defendant*
*The Goldman Sachs Group, Inc.*

13

3548188.1